[No. 6196.  Decided January 4, 1907.]

THOMAS B. LAIDLEY, *Appellant*, v. WM. MUSSER LUMBER &
MANUFACTURING COMPANY, *Respondent*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLI-
GENCE—EVIDENCE—SUFFICIENCY. There can be no recovery in an
action for personal injuries sustained by an experienced sawyer, on
the ground of contributory negligence, where it appears that he at-
tempted to pull a piece of lumber out of a clogged up chute and gave
it a jerk while in such a position that, when it suddenly gave way,
his arm came in contact with a saw which was in motion.

Appeal from a judgment of the superior court for Spo-
kane county, Huneke, J., entered October 16, 1905, upon the
verdict of a jury rendered in favor of the defendant by di-
rection of the court, after a trial on the merits, in an action
for personal injuries sustained by a sawyer in a sawmill.  Af-
firmed.

*Richardson, Roche & Onstine*, for appellant.
*Post, Avery & Higgins*, for respondent.

ROOT, J.—This is an action brought by the appellant
against the respondent to recover damages for personal in-
juries sustained by appellant while in the employ of the re-
spondent.  At the close of the introduction of testimony by
the appellant, the respondent challenged the sufficiency of the
evidence, and moved the court to render judgment in favor of
the respondent on the ground that the appellant had not
shown any negligence  upon the part of respondent, but had
shown that the appellant was guilty of contributory negli-
gence, which motion the court granted on the ground that the
appellant was guilty of contributory negligence.  Appellant
contends that the lower court erred, first, in granting respond-
ent's motion challenging the sufficiency of the evidence; sec-
ond, in overruling appellant's motion for a new trial; third,

[1]Reported in 88 Pac. 124.

in refusing to allow appellant to introduce evidence at the trial showing the use and purpose of the conveyor in the saw-mill, and its condition at the time of the accident.

For the purpose of discussing these questions, the court must consider all the facts in the case as favorable to the appellant as the evidence introduced at the trial will reasonably permit of; that is, the jury being judges of the evidence in the case, the court, in determining these questions, must consider that the jury would find the facts in the case as favorable to the appellant as the evidence would reasonably justify if the case had been submitted to them. This being true, appellant contends that the evidence justifies the following statement of facts, to wit: That the respondent is a corporation organized and existing under the laws of the state of Washington, and during the times mentioned in appellant's complaint, was running and operating a saw and planing mill in the city of Spokane; that the respondent had in use and in operation in said mill during said time a certain circular rip-saw, which was run and operated at a high rate of speed by means of revolving belts and shafting propelled by steam; that said ripsaw consisted of a large table, the top of which was about four feet wide, five feet long and one and one-eighth inches thick; that the top was supported by four legs, which were held together by cross-pieces, each of the legs about five and one-half or six inches square; that the table was about three feet high, the saw about twelve inches in diameter, fastened to a revolving arbor or axle which worked on bearings attached to the table underneath the top thereof in such a manner that the saw operated and revolved in a narrow opening in and through the top of the table, a distance of seven or eight inches from the end of the table; that two or three inches of the saw was above the top of the table and the balance of the saw, or eight or nine inches, below the top of the table; that at the end of the table where the saw was in operation, and underneath the saw and top of the table, was a

waste chute used to carry off the tailings or waste matter, which chute was about two feet square at the top and tapered to twelve or fourteen inches at the bottom; that the bottom of the chute went through the floor of the mill into a conveyor, which conveyor carried the tailings and waste material which fell into the chute outside of the mill; that the chute in which appellant was injured was about two feet square, and directly underneath the saw, and extended out from the end of the table and saw about twenty-two inches, and that under the saw it was close to the inner side of the chute, the saw blade being from one to two inches from the inner side of the chute; that the greater part of the chute was from the saw to the outer edge of the chute; that the whole saw, frame and all, weighed about three hundred and fifty pounds; that the saw was operated by means of revolving belts which transmitted the power from revolving shafts to the axle on which the saw was attached; that the saw was thrown in and out of gear by shoving and pushing the whole saw frame back and forth upon the floor; that there were pieces of board one by four inches nailed on the floor on the outside of the legs of the saw frame, which held it in place when it was being shoved back and forth to stop or start the saw; that the saw was thrown in gear by pushing it from the operator about eight inches, which tightened the belt, and it was thrown out of gear or operation by pulling the whole table, frame, saw and all toward the operator about eight inches, which loosened the belt; that the ease with which the saw could be thrown in or out of gear depended upon the condition of the sawdust, tailings, waste matter and lumber around the legs and upon the table of the saw at the time it was moved; that if there was considerable waste matter, sawdust and lumber around the legs of the saw, it was very hard to move and required two men to move it, and often it had to be moved by means of a lever; that there were no belt shifters or other mechanical contrivances to throw the saw in and out of gear except by moving the whole frame as

16—45 WASH.

hereinbefore mentioned; that part of the revolving saw which was underneath the table in the chute was not guarded in any manner, and the hand or arm of an employee working in, around or about the chute or underneath the table top of the saw, could easily come in contact with the saw; that the saw could have been guarded advantageously without interfering with its operation; that saws of the same style were guarded in the same way in the mill at the time plaintiff was injured; that there were no notices posted upon the saw to the effect that the saw was unguarded or dangerous, and appellant, at the time of his injury, was not warned by any officer that the saw was in a dangerous condition; that at the time appellant went to work he was not instructed by the foreman in regard to the dangers of using the saw, and had no experience in operating circular saws before; that for some time prior to March 15, 1905, the appellant had been in the employ of the respondent in the capacities of lumber piler, pipe fitter and oiler, appellant being a stationary engineer by occupation; that on March 15th appellant was put to work by the fore-man on the above described ripsaw; that he had only worked on the saw two days and began work on the morning of the third day, being March 17th, when he was injured; that on the morning of March 17th, appellant was ordered by the superintendent to rip some short pieces of lumber which were in the mill, and the superintendent put a boy a little past four-teen years of age to work with him to take away the tailings from the saw; that the boy had worked there only two days and had no experience in acting as tailsman, and the superin-tendent told appellant that the boy had had no experience at that kind of work and that he (appellant) should look after the boy and see that he did his work right and did not waste material, that is, throw good pieces of board into the waste chute; that, after appellant had been operating said saw a short time on the morning of March 17th, he saw the boy throw a good piece of lumber into the waste chute, and noticed that the waste chute was partly clogged up, that is, nearly

half full of waste matter which he afterwards learned was caused by the conveyor not being in operation; that at the time the boy threw the good piece of lumber into the chute, there was a lot of lumber on the table, and also a lot of waste material and sawdust around the legs of the table, so that the saw frame could not be moved easily; that as appellant had been ordered to watch the boy and see that he did his work right and did not waste material, for the purpose of saving the good pieces of lumber and, particularly, for the purpose of showing the boy the difference between waste lumber and good lumber, the appellant, as other sawyers had done, reached his arm into the chute to save the good piece of lumber which had become wedged in with the other waste matter in the chute, and when he took hold of the good piece of lumber it was fast and he gave it a jerk, and it loosened and came out a little quicker than appellant thought it would, and his elbow accidently came in contact with the saw, severely injuring his arm; that at the time appellant reached his arm in to remove the good piece of board, he also intended to clean out the chute, but had made no attempt to do so at the time he was injured; that there were no means provided by the respondent with which to remove pieces of board that might fall into the chute, except by reaching in with your hand and getting them, and that it was not practicable to stop the saw for that purpose, as it was necessary to move the whole frame in order to stop the saw; that when appellant's arm was in the chute, he could not see the saw unless he stooped over so that his head was lower than the top of the table.

There was evidence tending to establish the facts substantially as hereinbefore set forth.

The question presented is as to the action of appellant in placing his hand and arm into the chute and pulling at a fastened stick while he knew the saw was in motion, and when a sudden "giving away" of the stick would naturally and almost necessarily precipitate his arm against the saw. As the appellant was an experienced mill operative, in possession of

his natural faculties, it would seem that the danger from such a proceeding would be so apparent that nothing less than a spirit of recklessness could have prompted it. Assuming that respondent was guilty of negligence in not having guarded the saw, it is evident that the appellant, by his carelessness in the immediate presence of a known and imminent danger, contributed to the cause of his injury. Believing that the conclusion reached by the trial court was correct, its judgment is affirmed.

MOUNT, C. J., DUNBAR, HADLEY, and FULLERTON, J.J., concur.

CROW and RUDKIN, JJ., took no part.