[No. 10919.  Department Two.  May 7, 1913.]

HANS E. GARSTAD, *Respondent*, v. PIONEER SAND & GRAVEL
COMPANY, *Appellant*.[1]

MASTER AND SERVANT—INJURY TO SERVANT—CONTRIBUTORY NEGLI-
GENCE—EVIDENCE—SUFFICIENCY.  An employee injured in an attempt
to step or jump across the corner of a sand bunker, into which he
fell, is guilty of contributory negligence, as a matter of law, pre-
cluding a recovery, where it appears that there was a safe way,
open and apparent and known to him and but little less convenient
which he would have taken except for his haste (FULLERTON, J., dis-
sents).

Appeal from a judgment of the superior court for Pierce
county, Clifford, J., entered October 3, 1912, upon the ver-
dict of a jury rendered in favor of the plaintiff, in an action
for personal injuries sustained by an employee in a sand and
gravel plant.  Reversed.

*Hayden & Langhorne*, for appellant.

*Arctander, Halls & Jacobsen*, for respondent.

MAIN, J.—The object of this action is to recover damages
for personal injuries, alleged to be due to the negligence of
the defendant.   The accident out of which the litigation grew
happened on June 18, 1910.   The action was begun during
the latter part of January, 1912.   At the time of the acci-
dent, the defendant was operating a sand and gravel plant
near Steilacoom, Washington, and the plaintiff was at that
time employed about the plant.   The sand and gravel was
taken from the pit, and, by means of a flume, conveyed to the
bunkers.   At a point in the flume before reaching the bunk-
ers, there were   placed rods or bars for the purpose of ar-
resting the larger rock or stone. _ This was called the rock
chute.   Thirty feet below this there was a screen, the meshes
of which were sufficiently large to permit the sand and water
to pass through and yet prevent the passage of gravel. From

[1]Reported in 131 Pac. 1168.

this point the gravel passed down what was known as the gravel chute, and the sand and water continued down the flume to the sand bunkers, a distance of about twenty feet. Around the top wall of the sand bunkers was a heavy timber or plank of sufficient width to furnish a reasonably safe foot way. In one side of the bunkers were openings capable of being closed as occasion might require. When the bunker was filled with sand to a point above these openings, a slide would be raised, which would open the holes through which would then pass the sand into what was known as the sand boxes. The plaintiff had been employed at the plant for a period of about two weeks before the accident, and two days before had been put in charge of the bunkers. His duties there were to attend the rock chute, the gravel chute, and the sand boxes.

On the day of the accident, the plaintiff left the gravel chute, passed down a stairway to a landing or platform, then stepping upon the timber or plank at the top of the sand bunker, proceeded a distance of about six or eight feet to where there was an upright post inclining outward from the top wall of the bunker and supporting the flume, which passed over the bunker at an elevation of about four feet. The plaintiff was on his way to adjust the sand boxes, which were beyond the side of the bunker over which the flume passed. When he reached the post already referred to which supports the flume, he attempted to step across the corner of the bunker to the end of a plank which projected over the adjacent wall and under the flume about ten or twelve inches. Holding to the post with one hand, one foot upon the heavy timber at the base of the post, he extended his other foot across to the end of the plank, and releasing his hold upon the post, attempted to swing himself or jump across, and in his effort to do so, struck his head upon the bunker, which was four feet above, and fell into the bunker, sustaining the injury for which he claims damages. Instead of stepping across as he attempted, there was a reasonably safe way for

him to proceed by passing the upright post under the flume to the corner and then along the other side and under the flume to the plank which he was attempting to reach. This way was open and apparent and was known to the plaintiff. The reason he gives for attempting to step across rather than proceed around the corner was his haste. The distance which he attempted to step was approximately three or four feet; the distance around the corner would have been but little greater. The only inconvenience in passing around the corner was the fact that the flume was four feet above, but in reaching the end of the plank upon which he attempted to step, he must also pass under the flume. The case was tried to the court and a jury, and a verdict in the sum of $3,500 returned. At the conclusion of the evidence, the defendant challenged the legal sufficiency of the evidence and moved the court for a directed verdict. This motion was denied. After the verdict was returned, the defendant renewed its challenge to the legal sufficiency of the evidence to sustain the verdict, and moved the court for a judgment notwithstanding the verdict. This motion was overruled. The defendant appeals.

In the appellant's brief, a number of errors are assigned; but upon the oral argument counsel waived all assignments of error except the one challenging the sufficiency of the evidence to sustain the verdict.

As above stated, the respondent chose a dangerous way by which to reach the sand boxes, and in consequence thereof, was injured, when a reasonably safe way was open to him which was but little less convenient. It has, by repeated decisions of this court, become a settled principle that, where the master provides a reasonably safe method by which the employee may perform a given service, and the servant voluntarily elects to perform that service by a dangerous method, and is injured in consequence thereof, the servant is guilty of contributory negligence which bars his right to recover damages.

In *Bundy v. Union Iron Works*, 46 Wash. 231, 89 Pac. 545, it is said:

"The proposition is thoroughly established by the courts that, where an employee voluntarily elects to perform a given service in a perilous manner when a perfectly safe method is open and known to him, he is guilty of such contributory negligence as will defeat a recovery as against his employer."

The fact that the respondent was in haste at the time of the accident, and for that reason chose the dangerous way, does not relieve him from the operation of the principle stated.

In *Seghetti v. Eatonville Lum. Co.*, 65 Wash. 378, 118 Pac. 310, it is said:

"The master had provided the servant with a safe and simple way to do the thing he attempted to do. He could stop the cogs and rolls in from five to fifteen seconds, without interfering with the other movements of the machine or the rest of the machinery in the mill. This was well known to the appellant. He had often used the lever to stop the cogs and rolls. He did not do so this time because he was in a hurry and thought he could do it quicker in the way he attempted. His voluntary choice of an unsafe and dangerous way, instead of the safe and simple way provided for his protection, stamps his act with negligence, and exonerates the master from any liability for his consequent injury."

The conclusion we have reached upon this question is decisive of the action and renders further discussion unnecessary.

The judgment will be reversed, and the cause remanded with direction to the superior court to enter judgment in favor of appellant notwithstanding the verdict.

CROW, C. J., ELLIS, and MORRIS, JJ., concur.

FULLERTON, J. (dissenting)—The evidence in the record, as I read it, justifies the conclusion put upon it by the jury and the trial judge, rather than the conclusion put upon it by the majority. For this reason, I dissent from the judgment ordered.