[No. 3339.    Decided December 1, 1899.]

JOHN B. HOWE, *Respondent,* v. WEST SEATTLE LAND AND IMPROVEMENT COMPANY, *Appellant.*

NEGLIGENCE—REMOVAL OF OBSTRUCTIONS FROM HIGHWAY.

Where through the negligence of defendant obstructions were placed in a highway, which were subsequently removed by employees of defendant and the road supervisor, and so negligently placed beside the highway as to fall and injure one below, the defendant cannot shift responsibility from itself to the county, on the ground that it was the duty of the county to clear the highway and that it was the act of the supervisor and not of its employees which was the proximate cause of the injury.

SAME—CONCURRENT CAUSE.

If defendant places a log on the side of a hill in such an insecure way that it could be dislodged by a landslide, at a place where he has knowledge that such slides are apt to occur, and the log is dislodged as the immediate result of a land slide and falls, causing injury, the concurring act of defendant would render him liable for the injury caused.

INSTRUCTIONS—FAILURE TO GIVE—HARMLESS ERROR.

Error cannot be predicated upon the failure of the court to instruct upon matters in issue, when no proper instructions on the point are requested.

Appeal from Superior Court, King County.—Hon. E. D. BENSON, Judge. Affirmed.

*Struve, Allen, Hughes & McMicken,* for appellant.

*Frank B. Wiestling* and *McLaughlin, Morris & Southard,* for respondent:

A defendant whose act in law amounts to a legal wrong is responsible in damages for all the loss which is a natural and proximate consequence of his wrongful act. *Wiley v. West Jersey R. R. Co.,* 44 N. J. Law, 248; *Scott v. Hunter,* 46 Pa. St. 192 (84 Am. Dec. 542); *Pollett v. Long,* 56 N. Y. 200. The fact that a consequence is not immediate, either in point of time or in sequence of events, will not vary the responsibility of the author of the original wrong, provided the consequences which follow are natural and probable. *Hill v. Winsor,* 118 Mass. 251; *Texas & N. O. R. R. Co. v. Black,* 44 S. W. 673; *Coley v. Statesville,* 28 S. E. 482; *Deisenrieter v. Malting Co.,* 72 N. W. 735; *Bateman v. Peninsular Ry. Co.,* 20 Wash. 133.

It does not matter who directed the putting of the log in the place in which it is shown to have been left, so long as it was put upon private property, with knowledge that it there became a dangerous menace of injury; and every person connected with the act having such knowledge is liable for such injury as is the natural and probable result of such act. Negligence is imputable to every person so connected with such act; and this applies as well to corporations as to individuals. *Chacey v. Fargo,* 5 N. Dak. 173; *Weiss v. Bethlehem Iron Co.,* 88 Fed. 23; *Brown v. Chicago, M. & St. P. Ry. Co.,* 54 Wis. 342 (41 Am. Rep. 41); *Pastene v. Adams,* 49 Cal. 87.

The opinion of the court was delivered by

DUNBAR, J.—This action was brought by the respondent against the appellant, the West Seattle Land & Improve-

ment Company, and also against the county of King, for damages for the death of respondent's minor child. The West Seattle Land & Improvement Company is the owner of a certain tract of land immediately west of and contiguous to Cascade avenue in West Seattle. A certain tree was growing upon said land, which, by the direction of said company, was cut down to prevent it from endangering the lives of passers-by. The tree fell with its top reaching upon the avenue. Shortly after this, a slide occurred on the hillside west of the avenue, bringing down the stump from which the tree was cut, and a large amount of dirt, filling up the avenue to a considerable depth and carrying the tree above mentioned on to the sidewalk of the avenue. The ground from the avenue east as well as west is precipitous. Shortly after the slide spoken of, a deputy road supervisor, together with two men sent by the appellant company for the purpose of clearing out the avenue, cut the tree up, one cut being made into a log about thirty-five feet long, some twenty inches in diameter at the larger end and tapering to about ten inches at the other end. This log was, by these three men and some one else, who voluntarily assisted them, placed parallel with the avenue and about ten feet distant therefrom, on the side of the hill east of the edge of the avenue. The testimony shows that it was placed against some small standing alders, the largest of which was from three to four inches in diameter at the ground, the hillside being covered with many other alders of smaller dimensions and brush of different kinds. After placing the log in this position, they proceeded to clean out the avenue by shoveling therefrom the dirt that had slid into it from the hill above. A large portion of this dirt went under a depression which was immediately under the middle of the log, and, being wet and thin, escaped therefrom to the bottom of the hill. Other portions of it were thrown upon the ends of the log.

Thus the log remained for several days, when another slide or avalanche occurred, bringing down a great amount of dirt from the hillside above, a portion of it sweeping over the avenue and upon this log. This dislodged the log, and it was driven to the bottom of the hill, where, it is alleged, it struck the child of the respondent, who was in a closet at the foot of the hill, and killed it. The complaint alleges that the agents of this company so negligently placed the log there, and so negligently covered it with dirt, that it was precipitated to the foot of the hill and did the damage complained of. Upon the trial of the cause a verdict was rendered against the appellant and in favor of the respondent for damages in the sum of $1,000.

At the close of the plaintiff's testimony each of the defendants moved for a non-suit. The motion was granted so far as King county was concerned, but denied as to the appellant. There are quite a number of allegations of error, relating principally to the refusal of the court to give instructions asked for by appellant. A demurrer was also introduced to the plaintiff's amended complaint and was overruled, which action of the court is alleged as error here.

Appellant's first contention is that the motion for a non-suit should have been granted, for the reason that it is an undisputed fact that the entire control and authority over the public highways of a county is vested in the county itself, through its legally constituted officers; that Cascade avenue was a public highway; that a sudden slide had occurred, filling the highway and carrying the log in question on to it, where it obstructed foot passengers; that the work of removing these obstructions was under the charge of the road supervisor; that he was the only person who had authority to direct the work, and that it was solely on account of the emergency that the two men, Goldberg and Stevenson, were sent by the company to assist

the road supervisors; that they were voluntarily sent, and had no responsibility or authority in the work; that, being mere volunteers, they cannot be held responsible for any negligence that may have been exercised in clearing this highway. An instance is offered which is claimed to be parallel with the case at bar, viz.: If a public highway in the vicinity of a farm were to become suddenly obstructed, and a farmer sent his farm hand to assist the public officers in removing such obstruction, and the assistance was voluntarily given, it would not be held that the farmer would be liable to any third person for the alleged negligent manner in which the work of removal was done. It seems to us that the cases are easily distinguished. In the case at bar it appears from the undisputed testimony that the appellant was the original cause of the log being in the street. That being true, it was the duty of appellant, having obstructed a public highway, to remove such obstruction; and if, while such obstruction was in the street, any one by reason of the obstruction had been injured, there can be no doubt that the person placing it there would have been responsible for such injury. The testimony does not show who specially superintended the moving of the log from the road. It simply shows that the agent of the county and the agents of the appellant removed it. Again, it is not parallel with the case of the improvement of a road, by which improvement, if negligently made, some one is hurt or injured. This log, if we understand the testimony correctly, was not left in the road at all, but was placed parallel with the road, some ten feet east of its boundary; not for the purpose of mending the road, but solely for the purpose of disposing of the log. Then, if it be true that the log was placed there by the agents of this company, although assisted by the agents of the county, in such a negligent manner that it worked

injury to the respondent, the appellant cannot escape responsibility.

That portion of the court's charge which refers to the subject of negligence on the part of the appellant is as follows:

"If you believe from a preponderance of the evidence in this case that the death of plaintiff's son was caused by the failure of the servants of the West Seattle Land & Improvement Company, while employed upon such Cascade avenue by said defendant, to use such care as ordinarily prudent workmen upon highways generally exercise, under circumstances entirely similar to those which surrounded the servants of said defendant while they were doing the work complained of, then your verdict will be for the plaintiffs. . . . Should you be unable from the evidence to determine whether the acts of defendant's servants caused the death in question or not, or should you believe from the evidence that the acts of defendant West Seattle Land & Improvement Company's servants did not cause or materially assist in causing said death, your verdict must be for defendant. Should you believe from a preponderance of the evidence that the acts of the servants of the West Seattle Land & Improvement Company caused the death in question, but that reasonably prudent workmen in the position of the servants doing such acts would not have realized or discovered any danger in such act or acts, or any of them, then you will find for the defendant. . . . . The mere fact, if such there was, that other laborers assisted the servants of the defendant West Seattle Land & Improvement Company in performing the acts complained of, will not, of itself, exonerate defendant from liability, but defendant is not to be held responsible for the acts of any but its own servants."

These instructions are criticised by the appellant, but we think they fairly presented the law of the case to the jury, at least so far as they went. The criticism is that the instructions entirely ignored the avalanche or slide, which, it is conceded by the testimony, occurred; and, inasmuch as the plaintiff bases his right to recovery on

certain specific acts of negligence, which were alleged to
consist in shoveling and placing earth, rock, and other
obstructing material against and upon the log until a large
and heavy mass of earth was resting against and upon
the said log, whereby the weight of the whole thereof be-
came and was so great that the said log broke away from
its flimsy fastenings and lateral support and caused the
death of plaintiff's child, that the law in relation to the
effect that the avalanche had upon the breaking away of
the log should have been submitted to the jury, and that
the first instruction offered by the defendant should have
been given. The first instruction asked for, in addition
to reciting the facts stated in the complaint, was simply
to the effect that the burden of proof was upon the plaintiff
to establish the facts mentioned by a fair preponderance
of the evidence in the case. This instruction, we think,
was substantially given by the court when he instructed the
jury that a belief from the preponderance of the evidence
that the death of plaintiff's son was caused by the failure
of the servants of the West Seattle Land & Improvement
Company, etc., would justify a verdict against the com-
pany. It may be that there should have been an instruc-
tion given by the court in relation to the effect which the
avalanche or slide had upon the log, and that was a subject
which the jury should have taken into consideration in
determining their verdict. But it seems to us that no
proper instruction on that point was asked, and, that being
true, no error can be predicated on the neglect of the court
to instruct. The instruction on the subject asked was as
follows:

"You are further instructed that if you believe from
the evidence in this case that the death of said child was
caused by a slide occurring at the time and place in ques-
tion, and that said slide started on the hillside above Cas-
cade avenue and swept down across Cascade avenue and
over the said embankment, carrying the said log and earth

with it, and that said slide or avalanche was the immediate cause of the death of said child, then it will be your duty to return a verdict in favor of the defendant West Seattle Land & Improvement Company."

This instruction could not be properly given without some qualification. The testimony was to the effect that it was known to the agents of this company who were doing this work that slides were frequent and were liable to occur at that particular place during the rainy season. That being true, it was a question whether or not the knowledge of the probability of a slide should properly be imputed to these agents. If that knowledge could be imputed to them, then it was their duty to have placed this log on the side of the hill with reference to the effect that a probable slide would have upon it, and they could not escape responsibility by transferring it to the slide. If a mechanic contracts to build a house in a substantial manner in a country where deep snows are known to fall, and the snow does fall upon the roof, thereby breaking it in, he cannot defend against an action for damages by pleading that the roof was sufficiently strong to have maintained itself had it not been that a weight of snow fell upon it, which was the immediate cause of its breaking. If the avalanche was of such character that it could be considered the act of God, then the rule contended for would apply. But the character of the avalanche, and the notice that should have been imputed to the defendants in this case, were questions for the jury, under proper instructions, to determine. If the instruction asked for had had incorporated in it the statement that, if the jury should find that the avalanche or slide was of such a character that ordinary prudence could not have foreseen and guarded against it, the verdict should be for the defendant, such instruction should have been given; but as the instruction was proffered it did not,

in our judgment, state the law.    The next instruction asked for was as follows:

" You are further instructed that if you find from the evidence that a slide occurred at the time and place of the accident in question, and that said slide commenced above and to the west of Cascade avenue and swept across said avenue, and down over said bank, and that said slide caused the said log and the earth resting against the same to come down the said hill at that particular time, then it would be your duty to return a verdict for the defendant West Seattle Land & Improvement Company, even though you may believe from the evidence that said log was negligently placed in an insecure and unsafe position, and a weight of earth and stones negligently placed against the same, and that the said log and earth would or might have come down of their own weight at some other and later period."

This instruction has the same fault as the one just considered.    The next instruction asked for is covered by what we have said in the first part of this opinion in relation to the undisputed testimony that the company was the cause of the blockading of the highway by the log in the first instance.    The fifth instruction asked by defendant and refused was as follows:

" If you believe from the evidence in this case that the said slide occurred at the particular time and place when the said child was caught and killed thereunder because of the weight of earth and rocks placed upon or against said log by the officers and agents of King county in clearing said Cascade avenue, or unless you believe from the evidence that said log and debris would have come down at the particular time in question and caused the death of the child of plaintiff, without reference to the earth or rocks which you may find to have been placed against the same by the officers and agents of King county, and solely by reason of the acts of the agents of the other defendant, then it will be your duty to find a verdict in favor of the defendant West Seattle Land & Improvement Company."

The sixth instruction asked by defendant and refused is as follows:

"You are further instructed that before you can find a verdict against the defendant West Seattle Land & Improvement Company, you must believe from the evidence in this case not only that the officers and agents of the said defendant West Seattle Land & Improvement Company were guilty of the said negligent acts complained of as aforesaid, but that such acts done by them and under their control were alone and of themselves the direct and sufficient cause of the death of said child."

This seems to be, in substance, the same as the fifth instruction asked for, and we do not think it states the law. The doctrine of concurring cause is so well established that it is scarcely worth while to discuss it here, and these instructions asked for ignore that doctrine. Other instructions asked for embraced, in substance, this same point, so that it is not necessary to especially set them out. Certain instructions in relation to contributory negligence were asked for by the defendant, and refused by the court, but we think, from an examination of the instructions given by the court, that the question of contributory negligence was correctly and concisely presented to the jury; and, considering all the instructions asked for in connection with those given, we cannot say that the jury was misled in any particular with reference to the law governing the case.

Neither are we able to conclude that the amount of the verdict was so excessive that it indicated passion or prejudice on the part of the jury. We are free to confess that, so far as some of the questions of fact are concerned, had this court been sitting as a jury, it would probably have reached a different conclusion from that reached by the jury; but, the questions of fact having been submitted to that tribunal under proper instructions, and the jury having weighed the testimony, and passed upon its weight,

this court cannot, under the law, disturb its verdict.

The judgment will be affirmed.

GORDON, C. J., and FULLERTON and REAVIS, JJ., concur.